**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| KAMAL K. PATEL, *et al.*, | ) |
| | ) |
| Plaintiffs, *pro se*, | ) |
| | ) |
| v. | ) Civil Action No. 09-0200 (RWR) |
| | ) |
| BUREAU OF PRISONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT ON PLAINTIFFS' THIRD AMENDED COMPLAINT**

Plaintiffs, Kamal Patel and Dale Brown, bring this action against Defendants, the Federal

Bureau of Prisons ("BOP") and Harley Lappin, Director of the BOP (together, "Defendants"),

alleging eleven separate counts and seeking injunctive and declaratory relief against Defendants.[1]

This Court should dismiss all eleven counts of Plaintiffs' Third Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, grant summary judgment in favor

of Defendants pursuant to Federal Rule of Civil Procedure 56 on the following grounds: (1)

Plaintiffs have failed to state a claim of Constitutional and statutory violations based upon and in

connection with the circumstances and conditions of their confinement (Counts 1-7); (2) Patel's

---

[1] On July 12, 2010, Plaintiffs filed a Motion for Leave to File Third Amended Complaint As to Defendant Lappin in His Individual Capacity. Dkt. No. 65. Although Defendants had consented to the filing of a Third Amended Complaint to "resolve any confusion or disagreement about the meaning of the claims and allegations asserted in the Second Amended Complaint," *see* Dkt. No. 63, they had not consented to the addition of a damages claim against Defendant Lappin in his personal capacity in Count Five of the proposed Third Amended Complaint. Accordingly, on July 29, 2010, Defendants filed an opposition to Plaintiffs' motion for leave to amend. Dkt. No. 66. As Plaintiffs' motion for leave to amend is still pending before the Court, Defendants do not at this time address the damages claim against Defendant Lappin in his personal capacity as proposed in Count Five of the Third Amended Complaint. Defendants do not waive any arguments that may be made with regard to this claim following the Court's ruling on Plaintiffs' motion for leave, including, without limitation, immunity from suit.

claim under the Privacy Act of 1974, 5 U.S.C. § 552a(e)(7), is barred by the doctrine of *res judicata* or, alternatively, time-barred (Count 8); and (3) Defendants have satisfied all of their obligations with respect to Patel's Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests by conducting adequate searches for responsive records and produced to Patel all of the responsive records to which he is entitled (Counts 9-11).

Counts 1 through 7 of the Third Amended Complaint allege violations of the Fifth Amendment to the United States Constitution, the Eighth Amendment to the United States Constitution, the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, arising out of the BOP's confinement of Federal prisoners in privately run and operated facilities, placement of alien prisoners in private facilities, treatment of prisoners in private facilities, and various conditions of confinement.  *See* Third Amended Complaint ("TAC") ¶¶ 163-214.  As BOP's decisions regarding the confinement of Federal prisoners is precluded from judicial review and committed to the discretion of the agency, Plaintiffs fail to state a claim under the APA.  Moreover, BOP policy excluding foreign national inmates -- who are subject to immigration detainers and therefore deportable upon release -- from "nearer release transfer" is reasonably related to BOP's goal of reserving transfers and other opportunities to inmates likely to return to communities within the United States upon their release.  Therefore, Plaintiffs cannot show any constitutional, statutory, or APA violations and their claims under Counts 1-7 should be dismissed for failure to state a claim upon which relief can be granted.

Count 8 of the Third Amended Complaint alleges that the BOP violated the rights of Patel under the Privacy Act of 1974, 5 U.S.C. § 552a(e)(7), by maintaining a memorandum in his

file regarding a correspondence he sent to the *Dallas Morning News* in 2004. *See id.* ¶¶ 215-226. As Patel previously litigated this very claim in the Eastern District of Arkansas in 2006 and subsequently sought to revive the same arguments in the Western District of Oklahoma in 2009, his Privacy Act claim is barred by the doctrine of *res judicata*.

Counts 9 through 11 challenge the BOP's response to various FOIA requests submitted by Patel. *See id.* ¶¶ 227-244. The BOP has properly released all responsive, non-exempt records in response to the FOIA requests described in Counts 9-11 of the Third Amended Complaint, and Defendants are entitled to judgment in their favor on each of these claims.

As explained in greater detail below, Defendants respectfully submit that there is no genuine issue of material fact and they are thus entitled to judgment in their favor with respect to all claims that have been asserted in this action.

## BACKGROUND[2]

## I.    STATUTORY AND REGULATORY BACKGROUND

The Federal Bureau of Prisons is responsible for "the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3). The BOP is responsible for designating the place of a Federal prisoner's imprisonment and "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable." 18 U.S.C. § 3621(b). This determination is based upon the consideration of five factors: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and

---

[2] Solely for purposes of this motion to dismiss, Defendants accept as true those portions of Plaintiffs' Third Amended Complaint cited herein.

characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . .; and (5) any pertinent policy statements issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." *Id.* The BOP has contracted with private firms with correctional expertise to operate prisons to house felony offenders, predominantly criminal aliens, who might otherwise be incarcerated in BOP facilities. Declaration of Randall G. Powers ("Powers Decl.") ¶ 2. BOP currently utilizes 12 privately-owned and operated and one government-owned and privately-operated contract facilities to house inmates. *Id.* ¶ 3. Among the privately-owned and operated facilities are Rivers, a low-security facility in Winton, North Carolina owned and operated by The Geo Group, Inc., and Moshannon Valley Correctional Center and Big Spring Correctional Institution ("Big Spring"), both of which are owned and operated by Cornell Companies, Inc. *Id.*

### A.     Requirements and Policies Governing Private Facilities

All privately-owned and operated facilities that contract with BOP must comply with the Statement of Work, which outlines the requirements of the contract with BOP, the United States Constitution, all applicable federal, state, and local laws, applicable Presidential Executive orders, applicable case law, and court orders. *Id.* ¶ 6 & Ex. A, Statement of Work, at pp. 6-10. The contractor is required to perform in accordance with standards prescribed by the American Correctional Association ("ACA"), a private, nonprofit organization that administers the only national accreditation program for all components of adult and juvenile corrections, as well as medical standards outlined by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO"), the designated BOP national health care accreditation provider. *Id.* ¶ 6 & Ex. A, Statement of Work, pp. 6-10, 33. All private facilities must obtain accreditation by ACA and JCAHO within 24 months from contract activation. *Id.*

**B.      The BOP's Designation of Low-Security Criminal Aliens**

The majority of inmates housed in privately-operated facilities are low-security, non-U.S. citizens serving federal sentences.  Powers Decl. ¶ 5; Declaration of Cory Clark ("Clark Decl.") ¶ 3 & Ex. A, BOP Program Statement 5111.04 ¶ 1.   There are also approximately 650 low-security District of Columbia-sentenced felons housed in a private facility, in accordance with the National Capital Revitalization and Self-Government Act of 1997, Pub. L. No. 105-33 §§ 11201(c)(1).  Powers Decl. ¶ 5.  In addition, there are approximately 500 minimum-security, U.S. citizen inmates housed at the government-owned and contractor-operated Taft Correctional Institution Camp in California.  *Id.*

BOP policy regarding transfer of inmates to institutions that are closer to an inmate's legal residence or release destination is called "nearer release transfers."   Clark Decl. ¶ 4. Pursuant to BOP policy, nearer release transfers are not available to inmates with an order for deportation, an order of removal, an Immigration and Customs Enforcement ("ICE") detainer for an unadjudicated offense(s) or an ICE detainer for a hearing because they will likely return to a community outside the United States after release.  *Id.*

Several of the private contract detention facilities have an Institution Hearing Program ("IHP").  *Id.* ¶ 5.  The IHP is a coordinated effort by the BOP, ICE, and the Executive Office for Immigration Review ("EOIR") to meet the Attorney General's mandate to ensure deportation or exclusion proceedings begin as expeditiously as possible after the date of conviction, and that proceedings are finalized prior to the completion of the alien's sentence.  *Id.*  The IHP reduces the federal government's detention costs and enables the Bureau to manage its population more effectively.  *Id.*  Each contract detention center is either an IHP Hearing or IHP Release site and is ordinarily located in proximity to immigration offices where inmates' deportation status can be

finalized.  *Id.*  An IHP Hearing Site is a facility where ICE and EOIR conduct investigations and hearings, whereas an IHP Release Site is a facility where inmates who are ordered deported will ordinarily remain until the completion of their sentence.  *Id.*

When designating inmates to private facilities, BOP takes into account a number of factors in addition to detainers, such as bed space availability, sentence length, security level, custody level, and management concerns (security, disciplinary, medical or mental health concerns).  *See id.* ¶ 6 & Ex. B, Program Statement 5100.08, Ch. 1.  The majority of low-security, non-U.S. citizens serving federal sentences are designated to private facilities in order to effectively manage BOP's inmate population.  *Id.* ¶ 7.  However, medium and high-security, non-U.S. citizens serving federal sentences are designated to BOP facilities and, on occasion, low-security, non-U.S. citizen offenders may be designated to BOP facilities if bed space is available or if certain factors preclude an inmate's placement at a contract detention center.  *Id.* BOP staff will designate a site close to the eventual area of deportation whenever possible.  *Id.*

## II.    FACTUAL BACKGROUND

### A.    Circumstances of Plaintiffs' Incarceration

Patel is a British citizen and a legal permanent resident of the United States.  *See* TAC ¶ 81.  In March 1993, the United States District Court for the Western District of Texas sentenced Patel to 293 months in federal prison and three years of supervised release for conspiracy to import heroin, and ten years (to run concurrently) for witness tampering.  *See id.* ¶ 85; Ex. 1 (SENTRY Public Information Inmate Data for Kamal Patel).  Patel converted to Islam in 1998. *Id.* ¶ 89.  In January 2009, Patel was transferred to the Rivers Correctional Institution ("Rivers"), a low-security, BOP contract facility in Winton, North Carolina, where he was housed until March 2010.  *Id.* ¶ 107.  In March 2010, Patel was transferred to CI Big Spring, a private, low-

security facility in Big Spring, Texas.  *Id.* ¶ 108.  The Immigration and Naturalization Service[3] ("INS") has issued a Notice of Action of an Immigration Detainer advising that an investigation has been initiated to determine whether Patel is subject to removal from the United States.  *See* Ex. 2.

Brown is a Jamaican citizen and a legal permanent resident of the United States.  TAC ¶ 112.  In July 1992, the United States District Court for the Southern District of Florida sentenced Plaintiff Brown to 300 months in federal prison and five years of supervised release for conspiracy to import cocaine, conspiracy to possess with intent to distribute cocaine, and possession with intent to distribute hashish oil.  *See id.* ¶ 120; Ex. 3 (SENTRY Public Information Inmate Data for Dale Brown).  Brown is a practicing Jehovah's Witness.  TAC ¶ 116.  In 1992, the INS issued a Notice of Action of an Immigration Detainer advising that an investigation has been initiated to determine whether Brown is subject to deportation from the United States.  *Id.* ¶ 125; Ex. 4.  In 2008, Brown was transferred to Rivers, where he is presently incarcerated.  TAC ¶ 134.

## B.    Eighth Amendment Claim Regarding Exposure to Secondhand Smoke

Although outdoor exercise areas of Rivers have been specifically designated for smoking, Plaintiffs allege that Geo Group does not enforce these restrictions, causing secondhand smoke to be "prevalent throughout Rivers and impossible for federal prisoners to avoid."  TAC ¶¶ 151-152.  Plaintiffs further allege that Defendants have failed to require Geo Group to enforce smoking policies at Rivers that are applicable to BOP facilities and that, as a result, their exposure to secondhand smoke at Rivers has caused adverse present and future health effects.

---

[3]  In March 2003, the Homeland Security Act abolished the INS and transferred its functions to various agencies within the newly created Department of Homeland Security, including the U.S. Immigration and Customs Enforcement.  Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (codified at 6 U.S.C. §§ 251, 271, 291 (2006)).

*Id.* ¶¶ 202-203.   Specifically, Patel alleges that his asthma was aggravated as a result of secondhand smoke, necessitating the use of a new inhaler, and Brown alleges that he has suffered eye irritation and an aggravation of his allergies as a result of secondhand smoke. *Id.* ¶¶ 153-154.

### C.       Claims of Additional Inequities at Rivers

Plaintiffs allege that they have been deprived programmatic opportunities because of their status as permanent legal residents and have been subjected to additional inequities as a result of their confinement at a private facility.   TAC ¶¶ 155-161.   Specifically, Plaintiffs allege deprivation of the following purported inequities: (1) the ability to make unmonitored telephone calls to legal counsel, requiring them to rely instead upon the mail system for confidential communications with attorneys; (2) provision of writing paper and envelopes free of charge; (3) rates for telephone calls and basic items from the commissary similar to those charged at BOP facilities; and (4) the provision of email access.  *Id.*

### D.       Patel's Religious Freedom Restoration Act Claim

BOP specifically requires private facilities to comply with the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, *et seq.*, and to ensure the religious services programs are consistent with this Act.   Powers Decl. ¶ 9 & Statement of Work, at p. 30.   Patel alleges that Geo Group does not permit inmates at Rivers to pray while on work detail, nor adequately accommodate the religious dietary restrictions of Muslim prisoners.   TAC ¶¶ 147-150.   Patel, who is Muslim, contends that he is required to pray five times each day, but that he was prohibited from praying while on work detail at Rivers, substantially burdening his exercise of religion.  *Id.* ¶ 191-192.   Additionally, Patel contends that he was denied a diet conforming to his religious needs while confined at Rivers.  *Id.* ¶ 193.

**E.      Patel's Privacy Act Claim Involving a November 13, 2003 Memorandum Regarding Correspondence He Sent to the *Dallas Morning News***

While incarcerated at FCI Big Spring, Patel wrote a letter to the *Dallas Morning News*, communicating what he believed to be the favorable treatment afforded David Duke, who was at the time also an inmate at FCI Big Spring.  TAC ¶¶ 216-217.  He alleges that BOP personnel opened and read his letter to the *Dallas Morning News* and wrote a memorandum documenting the correspondence and recommending that Patel be moved from FCI Big Spring to another facility.  *Id.* ¶¶ 219-220.  Patel claims that on February 20, 2010, he initiated an administrative remedy request to amend his record, which was denied on April 30, 2010.  *Id.* ¶ 224.  However, following a search of its computer system for all administrative remedy requests filed to date by Patel, the BOP was unable to locate any record of an administrative remedy request received from Patel in 2010.  *See* Declaration of Bruce Plumley ("Plumley Decl.") ¶¶ 3-4.

Plaintiff previously advanced a Privacy Act claim against the BOP "involv[ing] a memorandum dated November 13, 2003, regarding correspondence Plaintiff mailed to the *Dallas Morning News*" in the United States District Court for the Eastern District of Arkansas, which entered an order on February 9, 2006, dismissing without prejudice the claim for lack of administrative exhaustion.  *See Patel v. United States*, No. 08-1168-D, 2009 WL 1377530, at *4-5 (W.D. Okla. May 14, 2009).  Plaintiff subsequently moved to reinstate this Privacy Act claim in the United States District Court for the Western District of Oklahoma, requesting that the district court reconsider the determination made by the court in the Eastern District of Arkansas, which the district court in Western District of Oklahoma declined to do.  *Id.* at *4.  As described in his motion to reinstate, Plaintiff had written to the *Dallas Morning News* to apprise the newspaper of allegations that "David Duke, also an inmate, was receiving favorably

discriminatory treatment at FCI Big Spring" -- the same facts underlying Plaintiff's Privacy Act claims in this action.  *See* Ex. 5.

> **F.     The BOP's Search for and Release of Non-Exempt, Responsive Records in Response to Patel's FOIA Requests**

Patel challenges the BOP's response to several FOIA requests that he allegedly submitted.  *See* TAC ¶¶ 227-224.

### 1.      *Records Related to Office of Inspector General Report (Count Nine)*

On November 22, 2004, Patel filed a FOIA request to the Office of Inspector General ("OIG") for documents related to an OIG Report.  *Id.* ¶ 228.  On or about May 2, 2005, the BOP FOIA Office received a referral of 21 pages of information from the OIG, which was assigned FOIA Request No. 2005-05331.  *See* Declaration of Wilson J. Moorer ("Moorer Decl.") ¶ 4 & Ex. A.  The 21 pages of records referred to BOP from OIG did not contain the OIG Report or any of the exhibits or witness interviews associated with the OIG Report.  *Id.* ¶ 10.  On June 10, 2005, the BOP responded to the referral from OIG by releasing 15 of the 21 pages in their entirety, and releasing six pages with redactions pursuant to FOIA Exemptions 6, 7(C), and 7(F). *Id.* ¶ 5 & Ex. B.  Patel contends that he filed three similar requests with the BOP on February 14, 2005 and March 5, 2005.  TAC ¶ 231.  Upon review of its FOIA database, BOP did not locate any FOIA requests from Patel on or around February 2005 and March 2005 requesting records relating to an OIG Report.  Moorer Decl. ¶ 12.

### 2.      *Records Related to Transfers (Count Ten)*

On January 29, 2009, Patel submitted a FOIA request requesting records relating to three separate transfers: (1) all transfer documents from Federal Correctional Institution ("FCI") Forrest City, Arkansas to Federal Medical Center ("FMC") Butner in 2006; (2) all transfer documents from FMC Butner to Pine Prairie in Louisiana in early 2008; (3) all transfer

documents from FMC Butner to CI Moshannon Valley in late 2008; and (4) the property forms from FCI Butner when he was placed in the special housing unit in December 2007 or January 2008.  TAC ¶ 236; Declaration of Lynnell Cox ("Cox Decl.") ¶ 10 & Ex. 5.  This request was assigned Request No. 2009-05112.  Cox Decl. ¶ 10.  Patel appealed the BOP's response to this request, limiting his appeal to contesting the adequacy of the search for a property inventory receipt.  *Id.* ¶ 13 & Ex. 7.  On remand, BOP staff forwarded a copy of this request to Rivers, where Patel as incarcerated at the time of BOP's response, and requested that the Rivers staff conduct a search for Patel's property forms.  *Id.* ¶ 12.  Upon a complete review of Patel's files, staff at Rivers was unable to locate a copy of the property forms in his records.  *Id.*

In addition, on March 3, 2009, BOP received a request from Patel for a copy of the medical transfer request submitted in September or October 2008 by prison officials at CI Moshannon Valley, as well as a copy of his medical records from January 2008.  Cox Decl. ¶ 4. This request was assigned Request No. 2009-05083.  *Id.*  Since inmate files are maintained by the institution where they are incarcerated, and Patel was incarcerated at Big Spring at the time of BOP's response, BOP staff forwarded a copy of Patel's request to Big Spring for a search of responsive records.  *Id.* ¶ 9.  Upon a complete review of Patel's files, staff at Big Spring was unable to locate a medical transfer request in his records.  *Id.*

### 3. *Records Related to Protection Hearing (Count Eleven)*

On or about May 5, 2009, BOP Central Office, FOIA/PA Section Official received a FOIA request from Patel requesting the following: "1) all documents pertaining to a Protection Hearing conducted during my incarceration at Moshannon Valley Correctional Institution, Philipsburg, Pennsylvania, a private contract facility for the Bureau of Prisons around November/December 2008; 2) as part of this request, please include any other documents,

memos, etc. which pertain to my classification as a protection hearing case, any documents created after the initial protection hearing and in any way relevant to this matter; 3) any and all segregation review hearing reports created from November 2008; and 4) a copy of all documents in my Inmate Central File created since September 15, 2008 up to the present." *See* TAC ¶ 243. Declaration of Vanessa Herbin-Smith ("Herbin-Smith Decl.") ¶ 2 & Ex. 1.

After Patel submitted a subsequent request in June 2009 that included the proper authorization form, the BOP Central Office assigned this Request No. 2009-09114 and forwarded it to the BOP Northeast Regional Office ("NERO") for processing. *Id.* ¶¶ 3-5 & Ex. 3. On or about March 15, 2010, NERO determined that three separate private contract facilities, Rivers, Moshannon Valley Correctional Institution, and Big Spring Correctional Center, were likely to have documents responsive to this request because Patel had been incarcerated at each of these facilities during the time period covered by Request No. 2009-09114. *Id.* ¶ 6. Accordingly, NERO forwarded FOIA Request 2009-09114 to each of these contract facilities for a search for responsive records. *Id.* In response, NERO received 401 pages of responsive records in total from the three private contract facilities for release determination. *Id.* ¶ 7. On April 19, 2010, after a review of these records, NERO released 247 pages in their entirety and 128 pages with excisions, and withheld 26 pages in whole. *Id.* & Ex. 5. Following a supplemental release determination, by letter dated August 13, 2010, BOP made an additional release of four pages that had previously been withheld in full with excisions pursuant to Exemptions 7(C) and 7(F) and determined that six pages that had previously been withheld in full were in fact not responsive to Patel's request. *Id.* ¶ 8. In sum, BOP released 247 pages in their entirety and 132 pages with excisions, and withheld 16 pages in their entirety pursuant to Exemptions 5, 6 7(C), and 7(F). *Id.* ¶¶ 7-8.

## STANDARD OF REVIEW

### I.     MOTION TO DISMISS

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if the complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *abrogating Conley v. Gibson*, 355 U.S. 41 (1957). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 127 S. Ct. 1937, 1949 (2009). Although the pleading standard "does not require detailed factual allegations," a plaintiff who wishes to survive a Rule 12(b)(6) motion must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 127 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). Hence, the focus is on the language in the complaint and whether that language sets forth sufficient factual allegations to support plaintiff's claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to plaintiff and must grant plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint, nor does it need to "accept legal conclusions

cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276.  Under this standard, Plaintiffs fail to state a claim against Defendants upon which relief may be granted.

## II.     MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 248.  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must instead establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  Summary judgment is thus due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  *Id.*

FOIA cases (such as this one) are typically and appropriately decided on motions for summary judgment.  *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("*CREW*"); *Wheeler v. Dep't of Justice*, 403 F. Supp. 2d 1, 5-8 (D.D.C. 2005).  An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for

responsive records and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974); *Wheeler*, 403 F. Supp. 2d at 6. "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). Here, BOP has submitted the Declarations of Wilson Moorer, Vanessa Herbin-Smith, and Lynnell Cox, all of which are reasonably detailed and accompanied by supporting *Vaughn* indices, to explain and justify the BOP's responses to Patel's FOIA request.

## ARGUMENT

**I.    THE BOP IS STATUTORILY AUTHORIZED TO PROVIDE FOR THE CONFINEMENT OF PRISONERS IN PRIVATE FACILITIES AND ITS CONFINEMENT DECISIONS ARE NOT SUBJECT TO JUDICIAL REVIEW UNDER THE APA**

Plaintiffs allege that the BOP violated the Administrative Procedure Act by (1) adopting a practice of confining Federal prisoners in private facilities without observing the procedural requirements mandated by the APA, TAC ¶¶ 163-169 (Count One); (2) violating its own regulations by segregating prisoners in private facilities, *id.* ¶¶ 170-176 (Count Two); (3) engaging in an unlawful designation of authority by permitting the standards applied at Rivers to be adopted without observing procedural requirements mandated by the APA, *id.* ¶¶ 177-182

(Count Three); (4) requiring aliens to subsidize the cost of their incarceration, *id.* ¶¶ 183-189 (Count Four); and (5) denying Plaintiffs consideration for transfer closer to their legal residences without observing the procedural requirements mandated by the APA, *id.* ¶¶ 208-214 (Count Seven).  Plaintiffs' APA claims are beyond the jurisdiction of the Court and are otherwise legally untenable.

The APA provides that a court may set aside an Agency action if is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if it is taken in excess of statutory jurisdiction or authority.  5 U.S.C. § 706(2)(A) & (C).  The APA, however, excludes from judicial review (i) any action that is committed to the Agency's discretion by law, or (ii) any action that is precluded from judicial review by statute.  5 U.S.C. § 701(a); *see Perez v. Lappin*, 672 F. Supp. 2d 35, 43-45 (D.D.C. 2009) (holding that BOP's decision to assign a public safety classification is not subject to judicial review under the APA); *Davis v. Federal Bureau of Prisons*, 517 F. Supp. 2d 460, 461 (D.D.C. 2007) (finding that there was no jurisdiction under the APA to review BOP determinations regarding placement of inmates in substance abuse programs, noting "judicial review is not available when (1) a statute precludes judicial review; or (2) agency action is committed to agency discretion").  Here, the decision as to where to confine a prisoner is both exempt from APA judicial review and discretionary.

## A.  The Confinement of Federal Prisoners in Private Facilities and Decisions Regarding Confinement Are Statutorily Exempt from Judicial Review

"The control and management of Federal penal and correctional institutions . . . shall be vested in the Attorney General, who shall promulgate rules for the government thereof."  18 U.S.C. § 4001(b).  The BOP, under the direction of the Attorney General, shall "(1) have charge of the management and regulation of all Federal penal and correctional institutions; [and] (2)

provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States . . . ."  18 U.S.C. § 4042(a). Pursuant to 18 U.S.C. § 3625, Congress has expressly provided that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."  18 U.S.C. § 3625; *see also Brown v. Fed. Bureau of Prisons*, 602 F. Supp. 2d 173, 176 (D.D.C. 2009) (finding that the judicial review provisions of the APA "do not apply to any determination, decision or order made under 18 U.S.C. §§ 3621-3626").  Under 18 U.S.C. § 3621(b), the BOP "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, *whether maintained by the Federal Government or otherwise* and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable."  18 U.S.C. § 3621(b) (emphasis added).  As such, the BOP's designation of any available penal or correctional facility that it deems "appropriate and suitable," irrespective of whether such a facility is maintained by the Federal Government, falls squarely into a determination that is precluded from judicial review.  Likewise, the BOP's designation of prisoners to any one facility and its decisions regarding participation in the nearer release transfer program are also shielded from judicial review, as "[a] plaintiff's place of imprisonment, and his transfers to other federal facilities, are governed by 18 U.S.C. § 3621(b)" and any determinations regarding a prisoner's place of confinement are "specifically exempt from challenge under the APA."  *Brown*, 602 F. Supp. 2d at 176.

> **B.  The Confinement of Federal Prisoners in Private Facilities and Decisions Regarding Confinement Are Discretionary and Immune from APA Review**

Additionally, judicial review under the APA is precluded here as decisions pertaining to the confinement of inmates are committed to the sole discretion of BOP.  By delegation from the

Attorney General, BOP has been entrusted with the administration and control of the federal correctional system. *See* 18 U.S.C. § 4001; 28 C.F.R. § 0.96. Among the duties delegated to BOP is the proper classification and segregation of inmates. *See* 18 U.S.C. 4001(b)(2) (providing that in management of federal penal institutions, the Attorney General may, among other things, "classify the inmates"); 18 U.S.C. § 4081 (providing that the federal correctional system shall be planned to assure the "the proper classification and segregation of Federal prisoners").

The statutes that confer BOP with the authority to confine inmates do not mandate a specific manner in which confinement of inmates should be accomplished. Instead, designation of federal inmates should be made "according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment." 18 U.S.C. § 4081. Decisions as to where BOP may place prisoners who have been committed to the custody of the BOP is, therefore, left entirely to the discretion of the BOP. *See, e.g.*, *United States v. King*, 338 F.3d 794, 798 (7th Cir. 2003) ("Under 18 U.S.C. § 3621(b), the BOP is authorized to house a prisoner . . . *anywhere* it deems appropriate.") (emphasis added); *Prows v. Fed. Bureau of Prisons*, 981 F.2d 466, 469 n.3 (10th Cir. 1992) ("Under 18 U.S.C. § 3621(b), the Bureau of Prisons . . . may direct confinement in any available facility and may transfer a prisoner from one facility to another at any time.").

Because decisions regarding the confinement and designation of federal inmates -- such as the decision to designate an inmate subject to an ICE detainer to a facility with an IHP site – are committed to the discretion of the BOP, judicial review of such a decision is precluded under the APA. 5 U.S.C. § 701(a). Therefore, this court lacks jurisdiction over Plaintiffs' claim that

the BOP's confinement of low-security criminal aliens to private facilities and denials of nearer

release transfers violate the APA.

### C.   The BOP's Interpretive Rulings Are Exempt From Notice and Comment Rulemaking

Even if Section 3625 did not preclude judicial review in this instance, the BOP's

interpretation of its statutory grant of authority to administer and manage the federal correctional

system does not implicate the procedural requirements of the APA that Plaintiffs contend are

required.  Plaintiffs' claims that the practices and standards applied at Rivers should be subject to

the procedural requirements mandated by the APA are unavailing.  Under the APA, legislative or

substantive rules have the force and effect of law and must be promulgated in accordance with

notice and comment procedures. *See* 5 U.S.C. § 553(b); *see also Chrysler Corp. v. Brown*, 441

U.S. 281, 301-20 (1979). The notice and comment requirements of the APA do not apply to

interpretive rules and statements. *See* 5 U.S.C. § 553(b)(A); *see also Air Transport Ass'n of Am.*

*v. FAA*, 291 F.3d 49, 55 (D.C. Cir. 2002).  Interpretive rules "advise the public of the agency's

construction of the statutes and the rules which it administers."  *Shalala v. Guernsey Mem.*

*Hosp.*, 514 U.S. 87, 99 (1995).

An interpretive statement that creates a new rule without an interpretive basis is

substantive in nature and must be issued in accordance with notice and comment procedures.

*See Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 95 (D.C. Cir. 1997).  Also, if a subsequent rule

repudiates or is irreconcilable with a prior legislative rule, the second rule is substantive. *See*

*Nat'l Family Planning v. Sullivan*, 979 F.2d 227, 235 (D.C. Cir. 1992); *see also Sprint Corp. v.*

*FCC*, 315 F.3d 369, 375 (D.C. Cir. 2003).  Conversely, a rule that sensibly conforms to the

wording and purpose of a prior legislative rule is an interpretation of that legislative rule, and is

thereby exempt from notice and comment procedures. *See Cent. Texas Tel. Co-op Inc. v. F.C.C.*,

402 F.3d 205, 213 (D.C. Cir. 2005).  And, if in the absence of the rule the agency would not have

an adequate legislative basis to ensure the performance of duties, then the rule is necessarily

substantive.  *See Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C.

Cir. 1993); *see also Air Transport Ass'n of Am.*, 291 F.3d at 56. Under all three factors, the BOP

policies at issue in this case -- its determination that private facilities are "appropriate and

suitable" for the confinement of Federal prisoners, the decision to deny criminal aliens

participation in the nearer release transfer program, and the determination as to which BOP

policies private facilities are required to follow -- are necessarily interpretations of the BOP's

statutory mandate and therefore exempt from the notice and comment procedures of the APA.

## II. PLAINTIFFS FAIL TO STATE AN EQUAL PROTECTION VIOLATION BASED UPON THE BOP'S DESIGNATION OF LOW-SECURITY CRIMINAL ALIENS TO PRIVATE FACILITIES, ENFORCEMENT OF STANDARDS AT RIVERS, AND DENIAL OF NEARER RELEASE TRANSFERS TO CRIMINAL ALIENS

It is well-settled that prisoners do not have a constitutional right to be designated to any

one particular correctional facility.  *Olim v. Wakinekona,* 461 U.S. 238, 245-46 (1983);

*Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that an inmate does not ordinarily have a

constitutionally protected liberty interest in his assignment to a particular prison).  Nevetheless,

Plaintiffs allege that the BOP violated the Equal Protection Component of the Due Process

Clause of the Fifth Amendment by designating Federal prisoners who are not U.S. citizens to

private facilities, denying Plaintiffs consideration for transfer closer to their legal residences

based upon their alienage, and refusing to require Geo Group to adhere to constitutional,

statutory, and regulatory standards applicable to the treatment of federal prisoners in connection

with inmates confined at Rivers.  *See* TAC ¶¶ 170-182, 208-214.  Plaintiffs' constitutional claims

are without merit because Plaintiffs have not alleged any facts which, even if true, would

constitute a violation of the Equal Protection Clause.

**A.     No Equal Protection Claim Can Be Predicated Upon the BOP's Designation of Low-Security Criminal Aliens to Private Facilities and Denial of Nearer Release Transfers, As Deportable Aliens Do Not Have A Legal Right to Return to the United States Upon Release**

The Equal Protection Clause does not require that all persons be treated alike, but rather prohibits the government from treating similarly situated individuals differently without a rational basis. *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Noble v. United States Parole Comm'n*, 194 F.3d 152, 154 (D.C. Cir. 1999). In order to succeed on an equal protection challenge, a plaintiff must first show that he has been or is being treated differently from persons who are similarly situated. *Cleburne*, 473 U.S. at 439; *Women Prisoners of Dist. of Columbia Dep't of Corrections v. Dist. of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) ("The threshold inquiry in evaluating an equal protection claim is . . . 'to determine whether a person is similarly situated to those persons who allegedly received favorable treatment.'"). As criminal aliens against whom immigration detainers have been filed and who are thus subject to deportation upon release, Plaintiffs cannot satisfy this threshold showing of being similarly situated to prisoners who have a legal right to return to the United States upon release.[4] For this reason, courts have rejected equal protection challenges to BOP decisions based upon an inmate's detention status because such inmates are not similarly situated to inmates who have a legal right to return to the United States population upon release. *See, e.g.*, *Armendariz-Mata v. Lappin*, 157 Fed. Appx. 767, 768 (5th Cir. 2005) (rejecting an inmate's equal protection challenge to BOP's "nearer to release" transfer guidelines because "he has not shown, as an alien subject to an INS detainer, that he is similarly situated to prisoners who will remain in the United States following their release"); *McLean v. Crabtree,* 173 F.3d 1176, 1185-86 (9th Cir. 1999)

---

[4]   Nor can Plaintiffs demonstrate that they are similarly situated to medium- and high-security criminal aliens who are confined to BOP facilities, by virtue of their low-security designation. *See* Clark Decl. ¶ 7.

(concluding that inmates failed to show that the detainer resulted in aliens as a group being differently from other persons based on their membership in the class of incarcerated aliens), *cert. denied*, 528 U.S. 1086 (2000); *Mendoza-Osequera v. Sanders*, No. 2:06CV00035 SWW-JFF, 2006 WL 3690889, at *4 (E.D. Ark. Dec. 12, 2006) (same).

The BOP classifies prisoners as "those who are subject to custodial considerations, including those who have detainers lodged against them, and those who are not, not on the basis of alienage." *Franco v. Bureau of Prisons*, No. Civ. A. 05-5077(RBK), 2006 WL 1207976, at *3 (D.N.J. Apr. 28, 2006) (citing *McLean*, 173 F.3d at 1185-86). Even if Plaintiffs can show that they are similarly situated to U.S. citizen inmates, which they cannot, the Equal Protection Clause would require only that the BOP's designation decision and denial of nearer release transfers rationally further a legitimate Government interest. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *McLean*, 173 F.3d at 1186 ("Because 'prisoners with detainers' does not constitute a suspect class, the detainer exclusion is valid so long as it survives the rational basis test . . . ."); *Franklin v. Barry*, 909 F. Supp. 21, 27-28 (D.D.C. 1995) (upholding BOP's reliance upon detainers in assigning security classifications to aliens).

Along these lines, courts have consistently held that it is rational for the BOP to refrain from using its resources to prepare and train inmates for re-entry into United States society where the inmates are deportable aliens who will likely leave the United States when released. *See Jimenez v. United States*, No. 2:07-cv-819, 2007 WL 3232469, at *5 (S.D. Ohio Nov. 1, 2007) (holding that "the Bureau clearly has a rational basis for excluding deportable aliens from consideration for rehabilitative programs"); *Whittaker v. United States*, No. 8:05-cr-99-T-24EAJ, 2007 WL 1296243, at *7 (M.D. Fla. May 1, 2007) (same); *Ruiz-Loera v. United States*, No. 00-CV-323-K, 2000 WL 33710839, at *2 (D. Utah June 23, 2000) (concluding that "[t]he [Bureau]

does not act in violation of Fifth Amendment equal protection standards in providing programs for prisoners who have a lawful right to remain in the country, whose rehabilitation is of interest to this country and the policy of this society, and in not providing programs for deportable aliens who have no right to be in the country and whom Congress has an interest in deterring from entering or returning"). As the court in *Ruiz-Loera* concluded, "The United States may treat deportable aliens and citizens differently. There is no primary interest in reformation of deportable persons. That's an interest of the country to which they may be deported." *Ruiz-Loera*, 2000 WL 33710839, at *2.

Here, the BOP designates the majority of low-security, non-U.S. citizen prisoners serving federal sentences to private facilities in order to effectively manage its inmate population. Clark Decl. ¶ 7. The BOP does not make nearer release transfers available to inmates with an order for deportation, an order of removal, an ICE detainer for an unadjudicated offense(s) or an ICE detainer for a hearing because these prisoners will likely return to a community outside the United States after release. *Id.* In addition, several of the private contract detention facilities have an IHP, which permits deportation or exclusion proceedings to begin as expeditiously as possible after the date of conviction so that proceedings may be finalized prior to the completion of the alien's sentence. *Id.* ¶ 5. Consequently, it is rational for the BOP to consider whether an inmate is permitted to return to United States society prior to investing resources to prepare the inmate for such a return. Additionally, it is rational for the BOP to designate and transfer inmates to IHP sites in order to reduce the federal government's detention costs by ensuring deportation proceedings are completed prior to the expiration of aliens' sentences.

**B.     No Equal Protection Claim Can Be Predicated Upon Vague Assertions of Inequitable Treatment of Inmates Confined at Rivers**

In Count Three, Plaintiffs raise an Equal Protection challenge based upon the vague assertion that "Defendants refuse to require Geo Group to adhere to constitutional, statutory, and regulatory standards applicable to the treatment of federal prisoners in connection with inmates confined at Rivers."  *See* TAC ¶¶ 177-182.   Elsewhere in the Third Amended Complaint, Plaintiffs allege that they have been deprived programmatic opportunities because of their status as permanent legal residents and have been subjected to additional inequities as a result of their confinement at a private facility, including deprivation of the following purported inequities: (1) the ability to make unmonitored telephone calls to legal counsel, requiring them to rely instead upon the mail system for confidential communications with attorneys; (2) provision of writing paper and envelopes free of charge; (3) rates for telephone calls and basic items from the commissary similar to those charged at BOP facilities; and (4) the provision of email access.[5] *See id.* ¶¶ 155-161.

Plaintiffs' claim regarding BOP's alleged refusal to require Geo Group to adhere to applicable constitutional, statutory, and regulatory standards in connection with inmates confined at Rivers should be dismissed.   BOP requires all privately-owned and operated facilities that contract with it to comply with the Statement of Work, which outlines the requirements of the contract with BOP, the United States Constitution, all applicable federal, state, and local laws, applicable Presidential Executive orders, applicable case law, and court orders.   Powers Decl. ¶ 6 & Ex. A, Statement of Work, at pp. 6-10.   Additionally, Plaintiffs' complaints of unspecified

---

[5]  As the Supreme Court has recognized, "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner.  An inmate does not retain rights inconsistent with proper incarceration."  *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).   As Plaintiffs acknowledge, notwithstanding the alleged restrictions on telephonic and email access, they are afforded access to the mail system for confidential communications with attorneys.

programmatic opportunities which they have been denied fail to state an Equal Protection violation. *See McLean*, 173 F.3d at 1186 (concluding that BOP's rule excluding inmates with detainers from sentence reduction eligibility after completion of residential substance abuse treatment program did not violate the Equal Protection Clause); *Isaraphanich v. Coughlin*, 716 F. Supp. 119, 120-21 (S.D.N.Y. 1989) (finding BOP's reliance on detainers to deny aliens access to prison programs did not violate the Equal Protection Clause).

Thus, for the reasons set forth above, Plaintiffs have failed to state a claim that their Equal Protection rights have been violated.

## III. PLAINTIFFS FAIL TO STATE A CLAIM OF A VIOLATION OF THE EIGHTH AMENDMENT BASED UPON EXPOSURE TO SECONDHAND SMOKE

Plaintiffs predicate their Eighth Amendment claim upon the alleged failure of Defendants to require Geo Group to enforce smoking policies at Rivers that prevent non-smoking inmates from being exposed to secondhand tobacco smoke. TAC ¶¶ 202-207. The Eighth Amendment provides a cause of action where a prisoner can show that the deliberate indifference of prison officials exposed him to levels of secondhand smoke that pose an unreasonable risk of serious harm to his future health. *Helling v. McKinney*, 509 U.S. 25, 34 (1993). To prevail on such a claim, a prisoner must prove both an objective element, that he was exposed to unreasonably high levels of secondhand smoke, and a subjective element, that prison officials were deliberately indifferent to a serious risk of harm. *Id.* at 35-36. A prison's adoption of a smoking policy "bears heavily" on the deliberate indifference inquiry. *Id.* at 36. Here, the assertions that secondhand smoke is "prevalent" throughout the outdoor exercise areas at Rivers, that Patel's asthma was aggravated as a result of secondhand smoke, and that Brown suffered eye irritation and an aggravation of his allergies as a result of secondhand smoke, TAC ¶¶ 153-154, fail to satisfy either the objective or the subjective component of the Eighth Amendment inquiry. *See*

*Koehl v. Greene*, No. 9:06-CV-0478 (LEK/GHL), 2007 WL 2846905, at *16-*17 (N.D.N.Y. Sept. 26, 2007) (granting motion to dismiss where plaintiff failed to allege facts plausibly suggesting that defendant knew of, and disregarded, an excessive risk to plaintiff's health or safety posed by secondhand smoke); *Grant v. Coughlin,* 91-CV-3433, 1992 WL 142037, at *3 (S.D.N.Y. June 9, 1992) (holding that "irritat[ion] of [plaintiff's] throat and lungs," and a "risk of serious medical harm" due to exposure to secondhand smoke did not satisfy requirement of Eighth Amendment that plaintiff had a sufficiently serious medical need); *see also Clemmons v. Bohannon*, 956 F.2d 1523, 1526-27 (10th Cir. 1992) (holding that "shortness of breath," irritation of throat, eyes and nose, and fact that exposure to secondhand smoke could possibly lead to "serious carcinogenic effects" did not, together, constitute medical condition that was sufficiently serious for purposes of Eighth Amendment).

Plaintiffs have made only general allegations that the smoking policy was not enforced, and does not state that there were any instances when impermissible smoking was detected but not addressed under the policy. Nor do Plaintiffs make any allegations, beyond the bare statement that "Defendants' . . . failure to protect federal prisoners from the effects of secondhand smoke is the result of deliberate indifference" that the BOP knew of, and disregarded, an excessive risk to Plaintiffs' health. As Plaintiffs' Eighth Amendment claim "pleads facts that are merely consistent with a defendant's liability," it fails to set forth sufficient factual allegations to support their claims for relief. *See Iqbal*, 127 S. Ct. at 1949. The Eighth Amendment claim should therefore be dismissed.

## IV.   PATEL FAIL TO STATE A CLAIM OF A VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT

In Count Five, Patel asserts a claim under the Religious Freedom Restoration Act ("RFRA"), alleging the Defendants refuse to require Geo Group to adhere to BOP policies

concerning religious practices of Muslims.  TAC ¶¶ 190-197.  Specifically, Patel alleges that he is a Muslim whose religious beliefs require him to pray five times each day and to adhere to special dietary restrictions.  *See id.* ¶ 191.  Plaintiff Patel further contends that, while confined at Rivers, he was prohibited from praying while on work detail and denied a diet conforming to his religious needs.  *See id.* ¶¶ 190-200.

RFRA provides that the government shall not substantially burden a person's exercise of religion unless application of the burden "(1) is in the furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a) & (b).  Patel's RFRA claims must fail unless he can make the threshold showing that the challenged regulations "substantially burden" his religion.  *Henderson v. Kennedy*, 253 F.3d 12, 16 (D.C. Cir. 2001); *Daly v. Davis*, No. 08-2946, 2009 WL 773880, at *2 (7th Cir. Mar. 25, 2009).  This he cannot do on the facts alleged here.  Notably, Patel nowhere alleges that being "denied a diet conforming to his religious needs" substantially burdened his Muslim faith, nor does he allege any facts as to the type of diet he was denied or the nature or frequency of any denials.  With respect to his allegation regarding praying while on work detail, Patel does no more than plead facts "merely consistent" with liability under the RFRA -- indeed, there are no allegations that he is required to pray at set times each day or that the inability to pray while on work detail overlapped with any of these times.  Patel's RFRA claim should therefore be dismissed for failure to state a claim.

Additionally, Patel alone alleges violations of RFRA during the time he was incarcerated at Rivers, seeking declaratory and injunctive relief.[6]  Plaintiff has since been transferred to CI Big Spring, however, *see* TAC ¶¶ 107-108, and makes no claims of RFRA violations at his

---

[6] As the D.C. Circuit held in *Webman v. Federal Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006), "RFRA does not waive the federal government's sovereign immunity for damages," so plaintiff would not be entitled to any monetary relief on his RFRA claim.

current place of confinement.  His transfer from Rivers thus renders moot his claim for injunctive

relief.  *See Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (deeming case moot where

plaintiffs challenged only legality of a Navy policy that had since ended).

**V.     PATEL'S PRIVACY ACT CLAIM IS BARRED BY THE DOCTRINE OF *RES JUDICIATA* AND IS TIME-BARRED**

Patel alleges the BOP violated the Privacy Act by maintaining a memorandum in his file

regarding his exercise of his First Amendment rights.  Patel contends that in 2004, he wrote a

letter to the *Dallas Morning News*, communicating what he believed to be the favorable

treatment afforded David Duke, who was at the time also an inmate at the same facility, and that

BOP personnel improperly wrote a memorandum documenting his correspondence with the

newspaper.  TAC ¶¶ 216-220.  Specifically, Patel claimed to have observed prison personnel

deliberately downgrading Duke's offense for violating regulations.  *Id.* ¶¶ 99-100. The Privacy

Act provides that an agency shall "maintain no record describing how any individual exercises

rights guaranteed by the First Amendment unless expressly authorized by statute or by the

individual about whom the record is maintained or unless pertinent to and within the scope of an

authorized law enforcement activity."  5 U.S.C. § 552a(e)(7); *Maydak v. United States*, 363 F.3d

512, 516 (D.C. Cir. 2004).   "Although the Privacy Act does not define 'law enforcement

activity,' the D.C. Circuit has interpreted the phrase broadly."  *Sieverding v. U.S. Dept. of

Justice*, 693 F. Supp. 2d 93, 105 (D.D.C. 2010) (quoting *Maydak*, 363 F.3d at 517).

Accordingly, records are exempt from 5 U.S.C. § 552a(e)(7) if "'relevant to an authorized

criminal investigation or to an authorized intelligence or administrative one.'"  *Id.* (quoting

*Nagel v. United States Dep't of Health, Educ. & Welfare,* 725 F.2d 1438, 1441 n.3 (D.C. Cir.

1984)); *see also J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 603 (D.C. Cir. 1996)

(holding that valid law enforcement activities require neither an active investigation nor a

"current law enforcement necessity").  As the BOP is charged with enforcing security at prisons, such a memorandum pertaining the prison staff's treatment of inmates would fall under this exemption.  Notwithstanding, and in any event, Patel's Privacy Act claim must be dismissed because it is barred by *res judicata* and by the applicable statute of limitations.

Having twice asserted this same Privacy Act claim against the BOP in two other federal district courts, Patel's Privacy Act claim should be dismissed on *res judicata* grounds.  The doctrine of *res judicata* provides that a final judgment on the merits in a prior suit involving the same parties bars subsequent suits based on the same cause of action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979); *Apotex, Inc. v. Food and Drug Admin.*, 393 F.3d 210, 217-18 (D.C. Cir. 2004).  The doctrine helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum shopping and piecemeal litigation."  *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981).  A claim is thus precluded if (1) there is a sufficient identity between the parties in the two suits, (2) there is a final judgment on the merits in an earlier action, and (3) there is a sufficient identity of the cause of action in the two suits.  *See Stanford v. Potomac Elec. Power Co.*, 394 F. Supp. 2d 81, 88 (D.D.C. 2005).  "Whether two cases implicate the same cause of action turns on whether they share the same nucleus of facts."  *Apotex*, 393 F.3d at 217-18.  Here, Plaintiff previously advanced a Privacy Act claim against the BOP "involv[ing] a memorandum dated November 13, 2003, regarding correspondence Plaintiff mailed to the *Dallas Morning News*" in the United States District Court for the Eastern District of Arkansas, which entered an order on February 9, 2006, dismissing without prejudice the claim for lack of administrative exhaustion. *See Patel v. United States*, No. 08-1168-D, 2009 WL 1377530, at *4-5 (W.D. Okla. May 14, 2009).  Plaintiff subsequently moved to reinstate this Privacy Act claim in the United States

District Court for the Western District of Oklahoma, requesting that the district court reconsider the determination made by the court in the Eastern District of Arkansas, which the district court in Western District of Oklahoma declined to do.  *Id.* at *4.  As described in his motion to reinstate, Patel had written to the *Dallas Morning News* to apprise the newspaper of allegations that "David Duke, also an inmate, was receiving favorably discriminatory treatment at FCI Big Spring" -- the same facts underlying the Privacy Act claims in this action.[7]  *See* Ex. 5.  The Western District of Oklahoma noted that because the dismissal was without prejudice, Plaintiff could have brought a separate civil action, as he was attempting to do, but failed to pursue his claim in a timely manner because his claim regarding the 2003 memorandum would be barred by the statute of limitations.  *Patel*, 2009 WL 1377530, at *4-*5.  As the doctrine of *res judicata* precludes relitigation of claims that were raised in a prior litigation in which a final judgment was rendered, Privacy Act claim should be dismissed.

In the alternative, even if principles of *res judicata* were inapplicable, a Privacy Act claim is time-barred if not filed within the two-year statute of limitations established by Congress.  5 U.S.C. § 522a(g)(5); *Ramirez*, 594 F. Supp. 2d at 62 (dismissing as untimely plaintiff's Privacy Act claims filed more than two years after the statute of limitations had run). Patel bases his Privacy Act claim upon a memorandum that was dated November 13, 2003, well over two years before his filing of an amended complaint on September 1, 2009 to add this Privacy Act claim.  Patel's claim that he initiated an administrative remedy request to amend his record on February 20, 2010 that was denied on April 30, 2010, *see* TAC ¶ 224, does not restart the statute of limitations, particularly given that the BOP has no record of an administrative remedy request received from Patel in 2010, *see* Plumley Decl. ¶¶ 3-4.  At the very latest, Patel

---

[7]  Although the Third Amended Complaint alleges that Patel wrote to the *Dallas Morning News* in 2004, the pleadings from the Western District of Oklahoma indicate the BOP memorandum was drafted in 2003.

knew of the existence of the memorandum by February 9, 2006, the date of the order from the

United States District Court for the Eastern District of Arkansas dismissing his Privacy Act claim

based on this same memorandum.  Thus, Patel's Privacy Act claim is time-barred.

## VI.   THE BOP PROPERLY RELEASED ALL RESPONSIVE, NON-EXEMPT RECORDS IN RESPONSE TO THE FOIA REQUESTS FOR WHICH PATEL HAS EXHAUSTED ADMINISTRATIVE REMEDIES

Patel challenges the sufficiency of the BOP's response to the following FOIA requests:

(1) BOP's processing of 21 pages referred by the Office of the Inspector General, TAC ¶¶ 227-

233; (2) a request made in January 2009 for records relating to three separate transfers and a

request made in February 2009 for records relating to a medical transfer request, *id.* ¶¶ 234-241;

and (3) a request made in April 2009 for records related to a protection hearing while he was

incarcerated at Moshannon Valley Correctional Center, *id.* ¶¶ 242-244.  The FOIA requires that

an agency release all records responsive to a properly submitted request unless such records are

protected from disclosure by one or more of the Act's nine exemptions.  5 U.S.C. § 552(b); *U.S.*

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989).  A court may order the production

of agency records upon a finding that responsive records have been improperly withheld from

the requester.  5 U.S.C. § 552(a)(4)(B); *Antonelli v. BOP*, 591 F. Supp. 2d 15, 24 (D.D.C. 2008).

Once the court determines that an agency has released all nonexempt records, it has no further

judicial function to perform under the FOIA and the FOIA claim is moot.  *Perry v. Block*, 684

F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp.2d 5,

7-8 (D.D.C. 2008).  As demonstrated below, BOP has adequately responded to each of these

FOIA requests and/or referrals by releasing to Patel all non-exempt, responsive records to which

he is entitled.

### A.   The BOP Properly Processed the 21 Pages Referred by the Office of the Inspector General

Patel challenges the BOP's processing of 21 pages referred to it by the Office of Inspector General, in response to a FOIA request that Patel had filed with the OIG for documents related to an OIG Report, taking exception with the fact that none of the exhibits or witness interviews associated with the OIG report were provided, "nor was any reason provided for their withholding."  *See* TAC ¶¶ 227-233.  Patel also claims to have filed "similar requests" with the BOP in February and March of 2005.  *Id.* ¶¶ 231-232.

> ### 1. BOP Processed All 21 Pages Referred by the OIG and Has No Record of "Similar Requests" from Patel for Documents Relating to the OIG Report

In May 2005, the BOP FOIA Office received a referral of 21 pages of information from the OIG.  *See* Moorer Decl. ¶ 4 & Ex. A.  BOP responded to the referral on June 10, 2005, releasing 15 pages in their entirety and portions of the six remaining pages with redactions pursuant to 5 U.S.C. §§ 552(b)(6), (b)(7)(C) and (b)(7)(F).  *See id.* ¶ 5 & Ex. B.  As explained in the Moorer Declaration, a referral by another agency means that the referring agency -- here, OIG -- received a FOIA request and determined that some of the responsive documents in its possession were originated by another agency -- here, BOP.  *Id.* ¶ 9.  In this instance, the 21 pages of records that were referred to BOP from OIG did not contain the OIG Report or any of the exhibits or witness interviews associated with the OIG report.  *Id.* ¶ 10.  The BOP's processing of the referral was thus limited to only the 21 pages referred to it by OIG.  *Id.*

Perhaps recognizing that BOP could not have released documents beyond those referred to it in response to a request filed with another agency, Patel claims that he filed "similar requests with the BOP, two on February 14, 2005 and one on March 5, 2005."  TAC ¶ 231.  "Exhaustion of administrative remedies is generally required before seeking judicial review" under FOIA.  *Wilbur v. Cent. Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per

curiam).   This claim is unavailing because Patel cannot be said to have administratively exhausted those so-called similar requests.

Exhaustion allows "the agency [ ] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision."   *Id.* (quoting *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)).   It is not a jurisdictional requirement, *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), but instead is a prudential consideration. *Wilbur*, 355 F.3d at 677.   If a requester has not exhausted his administrative remedies prior to the filing of a civil action, dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. *Banks v. Lappin*, 539 F. Supp. 2d 228, 234-35 (D.D.C. 2008) (citing *Hidalgo*, 344 F.3d at 1258).

The BOP has no record of receiving a FOIA request from Patel during the February or March 2005 time period for documents pertaining to an OIG report.   Moorer Decl. ¶¶ 12-14 & Exs. E-H.   An agency cannot improperly withhold records from a requester where the agency has not received the request in question.   *See, e.g.*, *Banks*, 539 F. Supp. 2d at 235 (dismissing plaintiff's FOIA claim where nothing in the record established that the agencies received the requests).   Thus, because the BOP could not have improperly withheld records pertaining to an OIG report for which it never received a request, Patel's FOIA claim fails in this regard.

### 2.   *BOP Properly Asserted Exemptions 6, 7(C) & 7(F) to Withhold Portions of Six of the 21 Pages Referred by the OIG*

In responding to the 21 pages referred by the OIG, BOP withheld portions of the six remaining pages with redactions pursuant to 5 U.S.C. §§ 552(b)(6), (b)(7)(C) and (b)(7)(F).   *See id.* ¶ 5 & Ex. B.   Exemption (b)(7) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of six enumerated harms.   *See* 5 U.S.C. § 522(b)(7)(A)-(F).

Here, the threshold requirement for invoking Exemption (b)(7) -- that the withheld information was "compiled for law enforcement purposes" -- is readily satisfied, as the BOP oversees the custody and care of federal offenders and the records pertained to a BOP report of investigation and memorandum regarding an incident involving Patel.  *See* Moorer Decl. Ex. C, *Vaughn* index. Exemption 7(C) protects records or information compiled for law enforcement purposes "to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(7)(C); *see also Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989).  In applying Exemption 7(C), courts generally first determine whether a privacy interest exists and then balance that privacy interest with the public interest in the information. *Reporters Comm.*, 489 U.S. at 762; *Schiffer v. FBI*, 78 F.3d 1405, 1410 (9th Cir. 1996).  While the agency bears the burden of establishing that the balance tips in favor of privacy, it is plaintiff's burden to support its claim that disclosure of withheld information advances the public interest.  *King v. Dep't of Justice*, 830 F.2d 210, 234 (D.C. Cir. 1987).

"The public's interest in disclosure of personnel files derives from the purpose of the Act -- the preservation of 'the citizens' right to be informed about what their government is up to.'" *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Reporters Comm.*, 489 U.S. at 773).  "This statutory purpose is furthered by disclosure of official information that 'sheds light on an agency's performance of its statutory duties.'" *Id.*  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Id.* at 1493.  The release of names and personal identifying information about individuals rarely furthers that purpose.  *See id.*  The Supreme Court has held "as a categorical matter" that the release of law enforcement

records containing information about a private citizen "can reasonably be expected to invade that citizen's privacy." *Reporters Comm.*, 489 U.S. at 780.  Privacy interests exist even if some information about an investigation (including the name of the individuals) has already been released.  *See, e.g.*, *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (although the press had reported that an Assistant United States Attorney had been investigated and punished, he retained a privacy interest "in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment").

FOIA Exemption 7(F) protects law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F). Courts have held that Exemption 7(F) can protect the names and identifying information of law enforcement officials, as well as third persons in connection with particular law enforcement matters, including information about inmates.  *See Anderson v. U.S. Marshals Serv.*, 943 F. Supp. 37, 40 (D.D.C. 1996) (protecting identity of inmate who required separation from incarcerated requester when disclosure could endanger his safety").

FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" includes any "'Government records on an individual which can be identified as applying to that individual.'"  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2nd Sess., 11 (1966), U.S.C.C.A.N. 1966, p. 2428).  Thus, Exemption 6 applies whenever disclosure would constitute a clearly unwarranted invasion of personal privacy.  *Id.*  As with Exemption 7(C), courts reviewing the use of the exemption weigh the privacy interests in nondisclosure against the

public interests in disclosure.  *See Beck*, 997 F.2d at 1491; *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).[8]

Here, BOP properly applied Exemptions (b)(6), (b)(7)(C), and (7)(F) to redact portions of six pages of the law enforcement report referred from OIG that contains the names, register numbers, and information regarding the statements of inmates involved in an official investigation conducted by the BOP.  Moorer Decl. ¶¶ 6-7.  Under both Exemptions 6 and 7(C), the privacy interests of inmates involved in the official investigation outweigh any public interest in disclosure.  The public interest served by the release of private information is "the preservation of 'the citizens' right to be informed about what their government is up to.'"  *Beck*, 997 F.2d at 1492 (quoting *Reporters Comm.*, 489 U.S. at 773).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose."  *Id.*  In addition, Exemption (7)(F) was properly applied to redact the name of an individual whom Plaintiff is to remain separated from during his period of incarceration given that the disclosure of this information could endanger the life or physical safety of an individual.  Moorer Decl. ¶ 8.  Courts have routinely upheld information relating to the identity of an inmate.  *See Anderson*, 943 F. Supp. at 40.

### 3.     BOP Complied With FOIA's Segregability Requirement

Finally, where non-exempt information could be segregated from exempt information, the BOP segregated and disclosed the non-exempt information.  Moorer Decl. ¶¶ 6-7 & Exs. C-D.  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld

---

[8]   Exemptions 6 and 7(C) differ in that Exemption 7(C) has a lower invasion-of-privacy threshold than Exemption 6, and Exemption 7(C) applies only to law enforcement records.  *See Beck*, 997 F.2d at 1492-94 (considering Exemptions 6 and 7(C) together).

cannot be further segregated.  *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578-79

(D.C. Cir. 1996); *see Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).

Here, the exhibits attached to the Moorer Declaration establish, with reasonable specificity, that

the names, register numbers, and personal privacy information could not be further segregated

and redacted.  The BOP therefore complied with its duty to segregate exempt from non-exempt

information.

### B.    The BOP Properly Searched for Documents Responsive to Patel's Request for Records Relating to Transfers

Patel challenges the BOP's response to a request for documents relating to three separate

transfers that he made in January 2009 and a request for documents relating to a medical transfer

request he made in February 2009.  TAC ¶¶ 234-241.  Under the FOIA, an agency must

undertake a search that is "reasonably calculated to uncover all relevant documents."  *Weisberg

v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  An agency's search for records is

adequate if it was "reasonably calculated to uncover all relevant documents."  *Valencia-Lucena

v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks omitted); *see

Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it

made a good faith effort to conduct a search for the requested records, using methods which can

be reasonably expected to produce the information requested.").  A search is not inadequate

merely because it failed to "uncover[] every document extant."  *SafeCard Servs., Inc. v. S.E.C.*,

926 F.2d 1197, 1201 (D.C. Cir. 1991).  Rather, a search is inadequate only if the agency fails to

"show, with reasonable detail, that the search method . . . was reasonably calculated to uncover

all relevant documents."  *Oglesby*, 920 F.2d at 68.  Once an agency demonstrates the adequacy

of its search, the agency's position can be rebutted "only by showing that the agency's search

was not made in good faith."  *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993).

Hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *Oglesby*, 920 F.2d at 67 n.13. "Agency affidavits enjoy a presumption of good faith that withstands purely speculative claims about the existence and discoverability of other documents." *Chamberlain v. U.S. Dep't of Justice*, 957 F. Supp. 292, 294 (D.D.C. 1997), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997).

As established by the Declaration of Lynnell Cox, the BOP's search method was reasonably calculated to uncover all records within the agency's control that were responsive to Request Nos. 2009-05112 and 2009-05083. As stated above, Patel limited his appeal of BOP's response to FOIA Request No. 2009-05112 to contesting the adequacy of the search for a property inventory receipt. Cox Decl. ¶ 13 & Ex. 7. On remand, BOP staff forwarded a copy of this request to Rivers, where Patel as incarcerated at the time of BOP's response, and requested that the Rivers staff conduct a search for Patel's property forms. *Id.* ¶ 12. Upon a complete review of Patel's files, staff at Rivers was unable to locate a copy of the property forms in his records. *Id.* With regard to Request No. 2009-05083, which sought a copy of the medical transfer request submitted in September or October 2008 by prison officials at CI Moshannon Valley, as well as a copy of his medical records from January 2008, BOP staff forwarded a copy of Patel's request to Big Spring for a search of responsive records since Patel was incarcerated at Big Spring at the time of BOP's response.[9] *Id.* ¶¶ 4, 9. Upon a complete review of Patel's files, staff at Big Spring was unable to locate a medical transfer request in his records. *Id.* ¶ 9. The BOP directed the private facilities to search for documents specifically requested by the transfer

---

[9]   The Third Amended Complaint states that Patel made a request on February 1, 2009 for documents relating to a medical transfer request, but makes no mention of the accompanying request for a copy of Patel's medical records from January 2008. *See* TAC ¶ 238. As such, it is unclear whether Patel is also challenging BOP's response to this portion of his FOIA request. As indicated in the Cox Declaration, Big Spring is in the process of searching for documents responsive to Patel's request for a copy of his medical records. *See* Cox Decl. ¶ 9.

requests in Patel's inmate file, which is where responsive documents would reasonably be expected to be located. *See id.* Thus, the BOP's search for records was adequate.

### C.      The BOP Properly Searched for and Released All Non-Exempt Documents Responsive to Patel's Request for Records Relating to A Protection Hearing

The FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions.  5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989).  A court may order the production of agency records upon a finding that responsive records have been improperly withheld from the requester.  5 U.S.C. § 552(a)(4)(B); *Antonelli v. BOP*, 591 F. Supp. 2d 15, 24 (D.D.C. 2008).  Once the court determines that an agency has released all nonexempt material, it has no further judicial function to perform under the FOIA and the FOIA claim is moot.  *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp.2d 5, 7-8 (D.D.C. 2008).  As Ms. Herbin-Smith's Declaration and accompanying *Vaughn* index demonstrate, that BOP properly invoked FOIA Exemptions 2, 5, 6, 7(C), 7(E) and 7(F) to withhold information in response to Patel's request for documents related to a protection hearing while he was incarcerated at Moshannon Valley Correctional Center.

#### 1.      The BOP Properly Asserted Exemption 2 "High"

Exemption 2 of the FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  The information need not be actual rules or practices; agencies can also invoke Exemption 2 for matters related to rules and practices. *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 369-70 (1976).  Courts have interpreted this statutory provision to encompass two very different categories of information: (1) internal matters of a relatively trivial nature (referred to as "low-

2"); and (2) more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement (referred to as "high-2").  *See id.*; *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992); *Nat'l Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 528-30 (D.C. Cir. 1986).  As an initial matter, an agency may withhold information under Exemption 2 if the information is "used for predominantly internal purposes." *Crooker v. ATF*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (*en banc*). If this threshold test is met, an agency may withhold the material "by proving that either [1] disclosure may risk circumvention of agency regulation, or [2] the material relates to trivial administrative matters of no genuine public interest." *Schiller*, 964 F.2d at 1207.

Here, BOP invoked Exemption 2 to protect withheld information relating solely to internal BOP practices that, if released, could circumvent BOP policies and practices in investigating allegations of illegal activity by dangerous inmates.  *See* Herbin-Smith Decl. ¶ 9. BOP determined that the disclosure of internal BOP procedures regarding the agency's response to and investigation of alleged illegal behavior by inmates would plainly risk circumvention of the law.  *See id.*  That is, if inmates involved in criminal activities knew how the BOP conducted its investigations of allegations of illegal behavior, they could (and certainly would) research and educate themselves with respect to the potential vulnerabilities of the BOP's approach.  The above information was therefore properly withheld pursuant to the high (b)(2) exemption. *Judicial Watch, Inc. v. Dep't of Commerce*, 337 F. Supp. 2d 145, 165 (D.D.C. 2004) (observing that information is properly withheld under the high (b)(2) exemption where "disclosure will benefit those attempting to violate the law and avoid detection") (internal quotation marks omitted)).

### 2.    *The BOP Properly Asserted Exemption 5*

Exemption 5 of the FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Thus, documents that would ordinarily be privileged in civil discovery context are protected from public disclosure. *See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148-149 (1975) (Exemption 5 exempts those documents that would be privileged as deliberative process, attorney-client communications, and attorney work product); *Martin v. Office of Special Counsel, Merit Sys. Protection Bd.*, 819 F.2d 1181, 1184-87 (D.C. Cir. 1987). In particular, the deliberative process privilege protects "the consultative functions of government by maintaining the confidentiality of advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). The purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. The privilege applies regardless of whether the deliberations involve attorneys or litigation is anticipated. It covers all "communications received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "all papers which reflect the agency's group thinking in the process of working out its policy," including "memoranda containing recommendations which do not ripen into agency decisions." *Id.* at 151-53. It also protects factual materials that are closely intertwined with opinions, recommendations, and deliberations. *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1538-39 (D.C. Cir. 1993).

Here, the BOP properly invoked the deliberative process privilege under Exemption 5 to protect predecisional information contained in agency records generated in the course of conducting an investigation regarding a potential security risk within the institution. Herbin-

Smith Decl. ¶ 10.  As these records were part of the agency's decision-making process regarding an investigation, the release of this information would harm the agency's decision-making process by inhibiting frank communications between prison officials.  *Id.*  The withheld information is thus predecisional, as it was generated in the course of conducting an investigation regarding a potential security risk, and deliberative, as it reflects opinions and communications exchanged between prison officials.  As such, they qualify for protection under the deliberative process privilege.  *See Mapother*, 3 F.3d at 1537 (to qualify for protection under the deliberative process privilege, information must be "both predecisional and deliberative").

### 3.    *BOP Properly Asserted Exemptions 6 & 7(C)*

As explained above, Exemptions 6 and 7(C), "though similar, are not coextensive," but are often considered in tandem.  *See Beck v. Dep't of Justice*, 997 F.2d 1489, 1492-94 (D.C. Cir. 1993) (considering Exemptions 6 and 7(C) together).  In response to this FOIA request, BOP invoked Exemptions 6 and 7(C) to protect "personal information of another individual on whose behalf no consent to release the information to the plaintiff was given."  Herbin-Smith Decl. ¶ 11.  This information was contained in records or information compiled for law enforcement purposes and included the name and address of this individual, as well as other personally identifiable details, that, if released, would constitute a clearly unwarranted invasion of personal privacy.  *Id.* ¶¶ 11-12.  As the D.C. Circuit has held, "'third parties who may be mentioned in investigatory files' and 'witnesses and informants who provide information during the course of an investigation' have an 'obvious' and 'substantial' privacy interest in their information."  *Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995)).  In particular, information pursued for a private purpose, that is, for Patel's own purposes, cannot outweigh even a slight privacy interest,

as "privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated. *Id.* at 457; *see also Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990) (rarely does a public interest outweigh an individual's privacy interest when law enforcement information pertaining to an individual is sought). Indeed, the Supreme Court has held "as a categorical matter" that the release of law enforcement records containing information about a private citizen "can reasonably be expected to invade that citizen's privacy." *Reporters Comm.*, 489 U.S. at 780. Finally, the release of names and personal identifying information about individuals rarely furthers the purpose of "shed[ding] light on an agency's performance of its statutory duties." *Beck*, 997 F.2d at 1492-93.

In sum, Plaintiff has failed to identify any public interest in the documents concerning his classification as a protection hearing case, much less the private information relating to another individual contained therein. Thus, the BOP properly invoked Exemptions 6 and 7(C) to protect information contained in law enforcement records that would constitute an unwarranted invasion of privacy of a third-party individual.

### 4.     BOP Properly Asserted Exemption 7(E)

Exemption (b)(7)(E) allows an agency to withhold information compiled for law enforcement purposes if its release "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . ." 5 U.S.C. § 552(b)(7)(E). Courts routinely permit the withholding of information pursuant to Exemption 7(E) because disclosure of such information would:   (1) reveal the specific techniques used by an agency in a particular investigation; and thus (2) provide criminals with information that they could use to tailor their activities to avoid future detection. *See Maguire v. Mawn*, No. 02-2164, 2004 WL 1124673, at *2-*3 (S.D.N.Y. May 19, 2004) (allowing the FBI to withhold information that disclosed

whether a particular bank used a particular security measure ("bait money")); *Butler v. Dep't of Treasury*, No. 95-1931, 1997 WL 138720, at *4 (D.D.C. Jan. 14, 1997) (permitting the withholding of "the type of equipment used in . . . surveillance").

Here, the BOP invoked Exemption 7(E) to withhold records or information that could reveal law enforcement investigative techniques employed by BOP, specifically in connection with the investigation of a concerned activity. *See* Herbin-Smith Decl. ¶ 13. The BOP properly concluded that disclosure of this information would risk the circumvention of investigative techniques employed by the BOP. *See Kurdyukov v. U.S. Coast Guard*, 657 F. Supp. 2d 248, 257 (D.D.C. 2009) (concluding that the Coast Guard properly withheld information pertaining to law enforcement surveillance, methods, and tactics because its disclosure could allow others to circumvent maritime counter-narcotics efforts in the future).

### 5. The BOP Properly Asserted Exemption 7(F)

Finally, BOP invoked Exemption 7(F) to protect the disclosure of information compiled for law enforcement purposes -- specifically, the names and identifying information of other inmates, separate assignment, and gang affiliation -- that the BOP determined, if released, could potentially endanger the life or physical safety of the individuals identified in the records by exposing their identity. *See* Herbin-Smith Decl. ¶ 14 & *Vaughn* index. *See Living Rivers, Inc. v. Bureau of Reclamation*, 272 F. Supp.2d 1313, 1321 (D. Utah 2003) (court should defer to agency's assessment of danger); *Garcia v. Dep't of Justice*, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002) ("In evaluating the validity of an agency's invocation of Exemption 7(F), the court should 'within limits, defer to the agency's assessment of danger.'" ) (quoting *Linn v. DOJ*, No. 92-1406, 1995 WL 631847, at * 9 (D.D.C. Aug. 22, 1995)).

### 6. BOP Complied With FOIA's Segregability Requirement

Where non-exempt information could be segregated from exempt information, the BOP segregated and disclosed the non-exempt information.  Herbin-Smith Decl. ¶ 15 ("Every effort has been made to provide plaintiff with all reasonably segregable portions of the records requested.").   To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong*, 97 F.3d at 578-79; *see Canning*, 567 F. Supp. 2d at 110.   Following a supplemental review of its release, the BOP released 132 pages with excisions and withheld 16 pages in full pursuant to Exemptions 5, 6, 7(C), and 7(F) upon its determination that no reasonably segregable portions thereof could be released from these 16 pages.  *See* Herbin-Smith Decl. ¶ 15.  The BOP's supplemental review and subsequent release is good-faith evidence of its compliance with its duty to release all reasonably segregable portions.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss all counts of Plaintiffs' Third Amended Complaint.  A proposed order is attached.

Date:  September 8, 2010                    Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney
for the District of Columbia

RUDOLPH CONTRERAS, D.C. Bar #434122
Chief, Civil Division

By:    /s/ Michelle Lo                                    .
MICHELLE LO
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 514-5134   Fax: (202) 514-8780
Michelle.Lo2@usdoj.gov